**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> **v.** <br><br> **EDWARD L. WILLIAMS**, aka **EDWARD L. WILLIAM** <br><br>       *Defendant*. | **Case No. 1:97-cr-064-RCL** |

**MEMORANDUM OPINION**

On July 28, 1997, petitioner Edward L. Williams pleaded guilty to one count of unlawful possession of a firearm by a convicted felon—or to be more precise, by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). In 2019, the Supreme Court decided *Rehaif v. United States*, in which it held that a conviction under § 922(g) requires proof that the defendant knew he or she had the relevant status. *See* 139 S. Ct. 2191, 2194 (2019). In response to *Rehaif*, Mr. Williams through counsel moved to vacate his conviction under 28 U.S.C. § 2255, arguing that because he was not informed of the knowledge-of-status element, his guilty plea was not knowing and voluntary. In a pro se amendment to his motion to vacate, he also asserted a claim for ineffective assistance of counsel.

The Court will first decline to reach the ineffective assistance of counsel claim because it is untimely, does not relate back to the original motion, and does not warrant equitable tolling. Next, the Court will explain that Mr. Williams procedurally defaulted on his guilty plea claim by not raising it on direct appeal. Further, Mr. Williams has failed to excuse his default by demonstrating either cause and prejudice or actual innocence. Mr. Williams contends that at the time he possessed the firearm, he did not know he had been convicted of a crime punishable by imprisonment for over a year. He asserts that he had been under the mistaken impression that he

1

had received only a juvenile adjudication that was then expunged.  For Mr. Williams to be correct about his understanding of his felony conviction, one would have to accept that he did not realize he was prosecuted as an adult, did not read his plea offer, did not glance at his docket sheet, did not notice he was imprisoned, and forgot he was on parole despite reporting regularly to his parole officer.  Mr. Williams' explanation strains credulity.

The Court will therefore **DENY** Mr. Williams' motion to vacate.  It will do so without an evidentiary hearing because the record conclusively shows that Mr. Williams is not entitled to relief.  Finally, the Court will **GRANT** the government's motion for leave to file under seal Mr. Williams' Pre-Sentence Report.

## I.   BACKGROUND

### A.  Mr. Williams' Prior Felony Conviction

In 1993, a D.C. Superior Court grand jury indicted Mr. Williams for two counts of rape, in violation of D.C. Code § 22-2801; one count of sodomy, in violation of D.C. Code § 22-3502; and one count of unlawful possession with intent to distribute a quantity of cocaine ("PWID"), in violation of D.C. Code § 33-541(a)(1).  *See* 1993 Indictment, Gov. Opp'n, Ex. 1, ECF No. 84-1. Although at the time of his arrest Mr. Williams was sixteen years old, he was prosecuted as an adult in the Superior Court Criminal Division.  *See* Def. Mot. for Downward Departure 2, ECF No. 26.  On March 10, 1994, the government extended a plea offer in a letter addressed to defense counsel.  Plea Offer Letter, Gov. Opp'n, Ex. 3, ECF No. 84-1.  The prosecution's offer was for Mr. Williams to plead guilty to "one count of Attempted Sodomy (a misdemeanor)" and "one count of Attempted Possession with Intent to Distribute Cocaine (a felony)."  *Id.* at 2.  On March 14, Mr. Williams pleaded guilty to one count of attempted sodomy and one count of attempted

PWID.  *See* PSR ¶ 21, ECF No. 85-1.  Neither a written plea agreement nor a transcript of the plea hearing is available.  Gov. Opp'n (Opp'n) 26 n.11, ECF No. 84.

On May 2, 1994, the Superior Court judge imposed concurrent sentences of one year for attempted sodomy and three years for attempted PWID under the Youth Rehabilitation Act, D.C. Code § 22-803(b).  *See* Judgment and Commitment Order, Opp'n, Ex. 4, ECF No. 84-1.  The order stated that Mr. Williams was "committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985]."  *Id.* (alteration in original); *see also* D.C. Code 24-803(b) (1996) ("If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other that this subsection, the court may sentence the youth offender for treatment and supervision pursuant to this chapter up to the maximum penalty of imprisonment otherwise provided by law.").  On the Order Assessing Costs, which contained spaces to write in the number of misdemeanor or felony charges, the judge filled in the space for misdemeanor charges by writing "two" and left the space for felony charges blank, even though Mr. Williams was actually convicted of one misdemeanor and one felony.  *See* Order Assessing Costs, Supp. to Mot. to Vacate, Ex. 3, ECF No. 76-3. Nevertheless, the docket sheet for his Superior Court case was prominently marked in big, bold, upper-case, practically unmissable letters: "**FELONY**."  *See* Docket Record, Sup. Ct. 1993 FEL 7884, Supp. to Mot. to Vacate, Ex. 1, ECF No. 76-1.

After Mr. Williams' sentencing, he was "stepped back."  *See* Judgment and Commitment Order.  According to Mr. Williams, he was housed first at the "juvenile block" of the D.C. Jail and then at "Youth Center I" in Lorton, Virginia.  Supp. to Mot. to Vacate 3, ECF No. 76.  He was

released on parole on July 5, 1996.  PSR 5.  As part of his parole, Mr. Williams submitted urine samples which on multiple occasions tested positive for marijuana.  *Id.* ¶ 42.

### B.  Mr. Williams' Felon-in-Possession Conviction

On January 14, 1997, Metropolitan Police Department officers arrested Mr. Williams for possession of a concealed handgun.  PSR ¶¶ 3–5.  At the time of his arrest, he was under parole supervision for both his attempted PWID conviction and a separate 1994 Superior Court conviction for carrying a pistol without a license.  *Id.* ¶ 23.  A grand jury in the United States District Court for the District of Columbia indicted Mr. Williams on one count of unlawful possession of a firearm by a convicted felon and one count of unlawful possession of ammunition by a convicted felon, both in violation of 18 U.S.C. § 922(g)(1).  Indictment, ECF No. 1.  The indictment alleged that Mr. Williams had "been convicted of a crime punishable by imprisonment for a term exceeding one year, in D.C. Superior Court Criminal Case No. F7884-93."  *Id.*  On May 15, 1997, Mr. Williams, who was being held without bail, moved for review of his conditions of release. *See* Mot. for Review of Conditions of Release, ECF No. 14.  He acknowledged that his criminal history "includes a felony drug offense (D.C. Superior Court Case No. F-7884-93), which is the predicate element of the offenses charged in the instant matter."  *Id.* at 2.  The Court denied the motion.  *See* ECF No. 16.

On July 28, 1997, Mr. Williams pleaded guilty to Count One of the Indictment, unlawful possession of a firearm by a convicted felon.  *See* Min. Entry (July 28, 1997).  He pleaded pursuant to a plea deal, although there was no written agreement.  Def.'s Receipt and Acknowledgment of Presentence Investigation Report, ECF No. 85-1.  At the plea hearing, the Court conducted a colloquy with Mr. Williams, which included the following exchange:

> THE COURT: I want to go over this Count 1 with you, Mr. Williams, because this is just what you will be pleading guilty to. It reads that on or about January 14,

1997, within the District of Columbia, you, having been convicted of a crime punishable by imprisonment for a term exceeding one year, in the Superior Court case number set forth there, did unlawfully and knowingly receive and possess a firearm, that is a .38 caliber revolver, which had been possessed, shipped and transported in and effecting interstate and foreign commerce. The charge you are actually pleading guilty to is Unlawful Possession of a Firearm by a Convicted Felon. Do you understand that?

THE DEFENDANT: Yes.

Plea Hr'g Tr. 19:5–18, ECF No. 39.  The Court also asked the government to summarize what the evidence would be if the case went to trial, advising Mr. Williams "to listen, because at the end of it I will ask you if that is what really happened and if you are really guilty of that offense." *Id.* at 22:6–10.  The prosecutor stated that if the matter had gone to trial, the government would have presented evidence establishing, among other things, that "the Defendant was in fact had a prior felony conviction." *Id.* at 23:6–7.  The Court then asked Mr. Williams: "Are you essentially in agreement with what the Government told me happened?" *Id.* at 23:13–14.  Mr. Williams responded "Yes." *Id.* at 23:15.  However, the hearing transcript does not contain any discussion of whether, at the time Mr. Williams possessed the firearm or pleaded guilty, he had *knowledge* of his felon status.  At the end of the hearing, the Court accepted Mr. Williams' guilty plea and entered a judgment of guilty on Count One.  *Id.* at 23:19–25.

On October 15, 1997, the Court sentenced Mr. Williams to fifty-one months' incarceration, to be followed by three years of supervised release.  Min. Entry (Oct. 15, 1997).  Mr. Williams appealed, but did not argue that his plea was not knowing and voluntary.  The D.C. Circuit affirmed.  *See United States v. William*, No. 97-3150, 1998 WL 388505 (D.C. Cir. May 22, 1998).  He began serving his term of supervised release on September 14, 2001.  *See* Probation Office Mem. (Dec. 11, 2003).[1]  It was due to expire on September 13, 2004, but on November 21,

---

[1] Although this document is not available on CM/ECF, the Court has retained it in hard copy.

2003, Mr. Williams shot two people with a handgun and then, while fleeing the scene, shot a pursuing MPD officer. *Id.* He was convicted by a Superior Court jury of numerous counts and sentenced to 45 years' imprisonment. *See* 2003 FEL 007449. Accordingly, the Court revoked Mr. Williams' supervised release and imposed an additional twenty-four months' incarceration to run consecutively to any other sentence being served. *See* Judgment on Revocation of Supervised Release, ECF No. 48.

### C. Mr. Williams' Collateral Attack on His Felon-in-Possession Conviction

On June 21, 2019, the Supreme Court decided *Rehaif v. United States*. 139 S. Ct. 2191 (2019). *Rehaif* addressed 18 U.S.C. § 922(g), which makes it unlawful for certain individuals to possess firearms, including anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1). The Court held that because § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to 10 years, "the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)." *Rehaif*, 139 S. Ct. at 2194. In reaching this result, the Court built on several previous cases concerning "the presumption in favor of 'scienter,'" meaning "a presumption that criminal statutes require the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequences of his or her act or omission.'" *Rehaif*, 139 S. Ct. at 2195 (quoting Black's Law Dictionary 1547 (10th ed. 2014)) (alteration in original) (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) and *Morissette v. United States*, 342 U.S. 246, 256–258 (1952)). Nonetheless, this decision overturned

6

"an interpretation that has been adopted by every single Court of Appeals to address the question."
*Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting).

After *Rehaif*, Mr. Williams, through counsel, moved to vacate his conviction pursuant to
28 U.S.C. § 2255.  *See* Mot. to Vacate, ECF No. 51.  He argued that because he was never advised
that knowledge of prohibited status is an element of a § 922(g) offense, his guilty plea was not
knowing and voluntary and was thus constitutionally infirm.  *Id.* at 3.  Several months later, Mr.
Williams filed a pro se motion to vacate, purporting to add the additional ground of ineffective
assistance of counsel.  *See* Pro Se Mot. to Vacate (Amend.), ECF No. 55.[2]  This motion included
an affidavit from Mr. Williams.  *See id.* at 13–16.  Next, Mr. Williams' counsel filed a supplement,
supplying more detailed argument than before.  *See* Supp.  The crux of Mr. Williams' argument is
that although his Superior Court PWID conviction constituted a crime punishable by imprisonment
for over a year, at the time of his arrest he erroneously "believed that he had been previously
adjudicated as a juvenile and served a juvenile sentence for a juvenile crime."  *See id.* at 8.  For
that reason, Mr. Williams argued that he is actually innocent and that there was a reasonable
probability that he would have gone to trial but for the constitutional error.  *See id.* at 6–12.

The government filed an opposition.  *See* Opp'n.  First, it argued that Mr. Williams' *Rehaif*
claim should be denied as procedurally barred.  In particular, it maintained that Mr. Williams
procedurally defaulted on his defective guilty plea claim because he did not raise this argument on
direct appeal.  *See id.* at 13–15.  The government further argued that Mr. Williams cannot excuse
his default through "cause" and "actual prejudice."  *See id.* at 15–20.  Nor, according to the
government, could he qualify for the actual innocence exception to procedural default because the

---

[2] The Court will treat this document as an amendment, not a supplemental pleading.  *See United States v. Hicks*, 283
F.3d 380, 385 (D.C. Cir. 2002) (explaining that amendments "rest on matters in place *prior to* the filing of the original
pleading" while supplements "set[] forth . . . events which have happened since the date of the pleading sought to be
supplemented." (citation omitted)).

evidence does not support his assertion that he was unaware of his felon status. *See id.* at 20–25. Second, the government argued that Mr. Williams cannot meet the standard for post-sentence withdrawal of a guilty plea. *See id.* at 26. Finally, the government urged the Court to deny Mr. Williams' motion without an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Opp'n 27 (quoting *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996)). Mr. Williams filed a reply, in which he contested the government's characterization of the evidence, argued that his claim is not procedurally barred, and demanded an evidentiary hearing. *See* Reply, ECF No. 90.

In addition, the government has moved for leave to file Mr. Williams' Presentence Report under seal. *See* Mot. for Leave to File Under Seal, ECF No. 85.

These motions are now ripe for review.

## II.    LEGAL STANDARDS

28 U.S.C. § 2255 permits a prisoner serving a federal sentence to move to "vacate, set aside or correct the sentence." 28 U.S.C. § 2255. The sentencing court is authorized to discharge or resentence a prisoner if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255(a). The petitioner must "clear a significantly higher hurdle" when seeking collateral relief than he would on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Relief under § 2255 is an extraordinary remedy and generally is only granted if "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (quoting *Hill v. United States*, 368 U.S.

424, 428 (1962)).  The burden of proof is on the petitioner to demonstrate his or her right to relief by a preponderance of the evidence.  *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012).

Usually, claims not raised on direct appeal may not be raised on collateral review.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  If a defendant procedurally defaults on a claim by not raising it on direct review, the claim may be raised on collateral review only if the defendant can show either (1) both sufficient "cause" excusing the double procedural default and actual prejudice resulting from the errors of which he or she complains or (2) that he or she is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).  To establish cause, ordinarily the prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the" requirement to raise the claim on direct review.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  For instance, "[c]ause may be shown where a claim is so novel that its legal basis is not reasonably available to counsel."  *United States v. Palmer*, 902 F. Supp. 2d 1, 16–17 (D.D.C. 2012) (Lamberth, C.J.) (citing *Bousley*, 523 U.S. at 622).  To establish prejudice, a defendant "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'"  *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (emphasis and alteration in original) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)).

Alternatively, the Court may consider a procedurally barred claim if the defendant can demonstrate that a constitutional error "has probably resulted in the conviction of one who is actually innocent."  *Bousley*, 523 U.S. at 621 (1998) (quoting *Murray*, 477 U.S. at 496).  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *United States v. Baxter*, 761

F.3d 17, 27 (D.C. Cir. 2014) (quoting *Bousley*, 523 U.S. at 623).  For these purposes, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

## III.    DISCUSSION

The Court will not reach Mr. Williams' ineffective assistance of counsel claim because his claim is time-barred, does not relate back to his original motion concerning his guilty plea, and is not entitled to equitable tolling.  The Court will deny Mr. Williams' motion to vacate because he procedurally defaulted on his claim concerning his guilty plea by not raising it on direct appeal. Mr. Williams has not established his entitlement to either exception to the procedural default rule because he has not shown either cause and prejudice or actual innocence.  And the Court will deny his motion without a hearing because the record conclusively shows he is not entitled to relief. Finally, the Court will grant the government's motion to file Mr. Williams' PSR under seal.

### A.  Mr. Williams' Ineffective Assistance of Counsel Claim Is Time-Barred

The Court will not entertain Mr. Williams' claim for ineffective assistance of counsel because it is time-barred, does not relate back to his initial motion, and does not warrant equitable tolling of the limitations period.[3]

Mr. Williams did not raise a claim for ineffective assistance of counsel in his initial motion to vacate.  *See* Mot. to Vacate.  However, in his pro se amendment, Mr. Williams asserted that he was denied effective assistance of counsel on the basis that "Trial Counsel failed to give Petitioner an accurate reading of the charging statute" because he "never informed Petitioner that he belonged

---

[3] Even if the Court reached the merits of Mr. Williams' ineffective assistance of counsel claim, it would still deny his motion to vacate.  To prevail on a claim for ineffective assistance of counsel, a petitioner must show (1) that his or her counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Whether or not the failure to inform Mr. Williams of the knowledge-of-status element was deficient, there is no reasonable probability that if counsel had so informed Mr. Williams, the result would have been different.  For the reasons discussed infra, Mr. Williams has not shown that he would have gone to trial had he been so informed and he has not made a plausible showing of actual innocence.

to relevant category of persons barred from possessing a firearm and that the government had to prove that he knew of status." *See* Amend. 5.

This claim is time-barred. The limitations period for a § 2255 motion is one year, which runs from the latest of several dates. *See* 28 U.S.C. § 2255(f). Here, the relevant date is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3).[4] Since *Rehaif* was decided on June 21, 2019, "the one-year statute of limitations set by *Rehaif* expired in June 2020." *United States v. Redrick*, No. 13-cr-155 (RJL), 2024 WL 1091789, at *4 (D.D.C. Mar. 13, 2024) (citing *Rehaif*, 139 S. Ct. 2191). Mr. Williams' original motion was timely.[5] However, his pro se amendment was filed in spring 2021, well after the limitations period had run. *See* Amend.

His untimely amendment also fails to relate back to his original motion. A court may consider claims brought outside the § 2255(f) limitations period if they relate back to timely claims under Federal Rule of Civil Procedure 15(c). *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). Claims "relate back to the date of the original pleading" if they form part of the same "conduct, transaction, or occurrence" as those originally brought. *Id.* at 656–57. "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. So, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ

---

[4] The parties agree that *Rehaif* is retroactive on collateral review. *See* Opp'n 11 n.7; *see also Redrick*, 2024 WL 1091789, at *4 (concluding that "because *Rehaif* narrowed the scope of conduct that § 922(g) punishes, it is a 'substantive' decision that applies retroactively in the habeas context"). Since the Court holds that Mr. Williams' *Rehaif* claim is procedurally barred, it will assume without deciding that *Rehaif* indeed applies retroactively.

[5] Mr. Williams' original motion was filed on Monday, June 22, 2020. *See* Mot. to Vacate. The day of the event that triggers the limitations period is excluded from calculating that period and "if the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *See* Fed. R. Civ. P. 6(a).

in both time and type from those the original pleading set forth." *Id.* at 650.  Relation back is "allowed only where the original motion provides adequate notice of the prisoner's claims and the proposed amendment would neither change the fundamental nature of those claims nor prejudice the Government's defense by requiring it to prepare its case anew." *United States v. Hicks*, 283 F.3d 380, 389 (D.C. Cir. 2002).

Here, the ineffective assistance of counsel claim raised in Mr. Williams' amendment does not relate back to the claim in his initial motion that his guilty plea was not knowing and voluntary. Mr. Williams' amendment plainly "asserts a new ground for relief." *Mayle*, 545 U.S. at 650.  The only fact Mr. Williams asserts to support this ground is that his counsel failed to inform him of the knowledge-of-status element.  But evaluating an ineffective assistance of counsel claim would shift the focus from what Mr. Williams knew to what his counsel did, as "[a] fair assessment of attorney performance requires that every effort be made . . . to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  Further, since Mr. Williams' initial motion to vacate did not discuss his counsel at all, it cannot be said that "the original motion provides adequate notice of the prisoner's claims." *Hicks*, 283 F.3d at 389.  Mr. Williams' filing is thus not "an amendment offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim," which may relate back, but instead "one that attempts to introduce a new legal theory based on facts different from those underlying the timely claims [which] may not." *Id.* at 388.  The ineffective assistance of counsel claim therefore does not relate back.

The Court also concludes that Mr. Williams is not entitled to equitable tolling.  A defendant moving for relief under § 2255 "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

prevented timely filing." *Baxter*, 761 F.3d at 30–31 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013)).  Equitable tolling should be employed "only sparingly."  *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  Courts in this Circuit rarely permit equitable tolling for § 2255 motions.  *See United States v. King*, No. 18-cr-318 (JDB), 2022 WL 579483, *9 (D.D.C. Feb. 25, 2022) (listing the three cases "[i]n the last ten years" in which "courts in this Circuit have granted equitable tolling of § 2255(f)'s limitations period").  Here, the reason Mr. Williams cited for his delay cannot justify equitable tolling.  In his amendment, he stated that his "motion must not be barred because Petitioner just recently became aware" of *Rehaif* as a result of his prison "not providing an adequate law library or access to such due to subsequent institutional lockdowns."  Amend. 10–11.  But although Mr. Williams asserted in his amendment that he had become aware of *Rehaif* only recently, nine months earlier he filed a motion to vacate based on that very decision.  Unawareness of *Rehaif* could not be an extraordinary circumstance that prevented timely filing of his ineffective assistance of counsel claim when it did not prevent his timely filing of his guilty plea claim.  The Court therefore will not equitably toll the limitations period for Mr. Williams' ineffective assistance of counsel claim.

For these reasons, the Court will not entertain Mr. Williams' amendment to the extent it seeks to raise an ineffective assistance of counsel claim, rather than merely elaborate on the guilty plea claim.  However, the Court will consider Mr. Williams' counseled supplement, which was filed pursuant to the Court's minute order approving the parties' Joint Proposed Briefing Schedule.  *See* Min. Order (Sept. 29, 2022).

### B. Mr. Williams' *Rehaif* Claim Is Procedurally Barred

Mr. Williams did not challenge his guilty plea on direct appeal.  He therefore procedurally defaulted on the claim he now seeks to advance that his guilty plea was constitutionally deficient because he was not informed of the knowledge-of-status element.  Based on this default, the Court concludes that Mr. Williams' *Rehaif* claim is procedurally barred, as he has not succeeded in excusing his default by demonstrating either cause and prejudice or actual innocence.[6]

### 1.  Mr. Williams Cannot Establish Cause

Mr. Williams has failed to show cause sufficient to excuse his procedural default.

According to Mr. Williams, there is cause since "[o]n direct appeal, in 1997, there was no reasonable basis to raise this argument because every court to have addressed it had rejected it, and every court continued to do so until *Rehaif*."  Reply 2 (citing *United States v. Werle*, 35 F.4th 1195, 1200 (9th Cir. 2022)).  To be sure, cause for default exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel" on direct appeal.  *Reed v. Ross*, 468 U.S. 1, 16 (1984).  "At least three circumstances demonstrate novelty: (1) the Supreme Court explicitly overrules its own precedent; (2) the Supreme Court changes course on a 'longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority has expressly approved'; and (3) the Supreme Court disapproves of a once-sanctioned practice."  *United States v. Hammond*, 354 F. Supp. 3d 28, 42 (D.D.C. 2018) (alterations in original) (quoting *Reed*, 468 U.S. at 17).  That said, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that

---

[6] The government also argued that regardless of the procedural default, Mr. Williams' § 2255 motion should be denied because he has not met the standard for post-sentence plea withdrawal.  Opp'n 26.  Since the Court will deny Mr. Williams' motion on the basis of procedural default, it will not reach this argument.

particular time.'"  *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Here, Mr. Williams cannot show cause since the argument that § 922(g) requires knowledge of status was reasonably available to his counsel.  He contends that at the time of his guilty plea, all six circuits to have addressed the issue had rejected a knowledge-of-status requirement.  Reply 3.  But he concedes that the D.C. Circuit had not yet weighed in—which readily distinguishes this case from *Werle*.  *See Wele*, 35 F.4th at 1200 (finding cause to excuse procedural default when "[a]t the time Werle pled guilty, all ten circuits that had addressed the issue, *including our court*, had held that the Government was not required to prove that a defendant knew his status as a felon at the time the defendant possessed the firearm.") (emphasis added). In any event, "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."  *Smith v. Murray*, 477 U.S. 527, 537 (1986).  The adverse decisions cited by Mr. Williams to show the unavailability of the knowledge-of-status argument actually prove that "the Federal Reporters were replete with cases involving" such challenges and that the argument therefore was not novel.  *See Bousley*, 523 U.S. at 622.  And although the *Rehaif* decision was new, the building blocks used to construct that result were not, as the *Rehaif* Court relied on the presumption in favor of scienter, which was well-established in the Court's case law, *Rehaif*, 139 S. Ct. at 2195.

The Court therefore concurs with the recent decision of another court in this district that before *Rehaif*, the "argument that ultimately prevailed" in that case was reasonably available, meaning that a defendant who failed to raise on direct appeal a challenge to the voluntariness of his guilty plea on this basis could not show cause to excuse his default.  *See Redrick*, 2024 WL

1091789, at *4.  Since the basis for Mr. Williams' claim was reasonably available to his counsel on direct appeal, he has not shown cause to excuse his procedural default.

### 2.  Mr. Williams Cannot Show Prejudice

Even if Mr. Williams could show cause, he cannot demonstrate prejudice.

Mr. Williams argues that he "has shown at least a reasonable probability that he would have gone to trial because he has shown he had a legally cognizable, 'plausible defense' to the sole charge in this case."  Reply 7 (quoting *United States v. Guzmán-Merced*, 984 F.3d 18, 21 (1st Cir. 2020)).  In particular, he says that had he known of the knowledge-of-status requirement, he would have proceeded to trial with the defense theory that he did not know his status.  *Id.* at 8–10.

To establish actual prejudice from a *Rehaif* error, the petitioner "has the burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a 'reasonable probability' that he would not have pled guilty."  *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).  A defendant who in fact was a felon "faces an 'uphill climb'" to make such a showing "[b]ecause a person with prior felony convictions 'ordinarily knows he is a felon.'"  *United States v. Reynoso*, 38 F.4th 1083, 1092 (D.C. Cir. 2022) (quoting *Greer*, 593 U.S. at 508).

On the facts of this case, Mr. Williams has not met his burden to show that had he been advised of the knowledge-of-status element, there is a reasonable probability he would not have pleaded guilty.  Mr. Williams asserts "that he pled guilty to attempted PWID under the pretense that it was a juvenile adjudication that would be expunged upon his release, and he did not know that it constituted an adult felony conviction."  Supp. 5; *see also* Amend. 4 (same).  Mr. Williams offers zero evidence that at the time of his firearm possession or plea he thought his felony PWID

conviction was a juvenile, non-felony offense.  Instead, he offers evidence that purportedly shows why he would have taken such a view.

First, he points out that on his Judgment and Commitment Order, the judge checked the box for commitment "to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985]" rather than the box for commitment "to the custody of the Attorney General for imprisonment for the period imposed above."  *See* Def. Supp 11 (citing Judgment and Commitment Order).  Second, the Order Assessing Costs had been filled out to say that he had been convicted of two misdemeanor charges.  *See* Order Assessing Costs.  Third, he asserts that he served his sentence in the juvenile wing of the D.C. Jail and then at a separate youth-specific facility.  *See* Supp. 11; Reply 11.  Fourth, he says that because he was released before completing his three-year sentence, he thought his conviction was automatically expunged under the Youth Rehabilitation Act.  *See* Supp. 9 (citing D.C. Law 13-302 (June 8, 2001); *but see id.* (providing that "[u]pon the *unconditional* discharge of a committed youth offender before the expiration of the maximum sentence imposed, the District of Columbia Board of Parole shall automatically *set aside* the conviction")) (emphasis added).  Next, he alleges that while seeking employment he received a police clearance form that did not reflect any convictions.  *See* Supp. 9.  Finally, he submits that he "does not recall being on parole."  Reply 11.  He states that "[u]pon his release, he was not instructed that he was on parole, nor was he instructed to report to a probation or parole officer"  and that "[i]f he was supposed to be on parole at the time, he had no notice of it."  Supp. 9 & n.6.

Mr. Williams' explanation for his ignorance of his felon status does not withstand scrutiny.  A great deal of evidence exists that Mr. Williams must have known he had been convicted of an

offense punishable by over a year in prison, rather than some sort of lesser juvenile offense. Most significantly, after he was convicted, he served over two years of incarceration. *See United States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020) ("[S]erving more than a year in prison provides circumstantial evidence of knowledge of felon status."). In addition, his conviction ensued from his prosecution as an adult, not a juvenile, in Superior Court's Criminal Division, not a juvenile or family court. And his Superior Court docket record was marked, in letters much larger than anything else on the page, "**FELONY**." *See* Docket Record, Sup. Ct. 1993 FEL 7884. His plea offer letter also expressly stated that his PWID charge was a felony. *See* Plea Offer Letter.

Moreover, Mr. Williams' alleged belief that his conviction had been expunged mostly relies on his assertion that after his release he had no way of knowing he was on parole—but that is clearly contradicted by the evidence. For one thing, the PSR reports that Mr. Williams was release on parole on July 5, 1996 and was under parole supervision at the time of his offense, PSR ¶¶ 21, 23. Further, it cites his D.C. Parole Officer Abercrombie's statement that Mr. Williams "submitted urine samples which tested positive for marijuana on numerous occasions." *Id.* ¶ 42. Mr. Williams tries to explain this away by arguing that "a young kid providing urine samples for testing could very well believe that those were required as follow-up for his juvenile adjudication for misdemeanors that he fully served in a juvenile wing under a law for juveniles." Reply 13. Mr. Williams overstates his immaturity; he was over nineteen years old and therefore an adult when he was released on parole. *See* PSR 2, ¶ 21. In any event, this attempted explanation is undermined by the fact that upon receipt of the draft PSR, Mr. Williams' counsel objected to certain "material/factual inaccuracies" in the report, but did not object to the statements that Mr. Williams was released on parole and submitted urine samples to his parole officer. *See* Receipt and Acknowledgment of Presentence Investigation Report. Even more devastating for Mr.

Williams' story, in his Motion for Review of Conditions of Release, filed in 1997, Mr. Williams' attorney reported that "counsel was advised by Probation Officer Abercrombie (by telephone) that Mr. Williams had a 'good reporting record,' but Williams' lack of a job was the Officer's primary concern."  *See* Mot. for Review of Conditions of Release 2.  There can be little doubt that Mr. Williams was on supervision for his PWID offense: the record shows he was submitting drug tests to his parole officer and that he had a "good reporting record" with that officer, who was keeping tabs on his employment.  The Court cannot credit his protestations that he believed his PWID conviction had been expunged because he did not know he was on parole.

The Court concludes that the evidence "demonstrate[s] that [Mr. Williams] must have known he had been convicted of offenses punishable by more than a year of imprisonment." *Reynoso*, 38 F.4th at 1093.  Although Mr. Williams emphasizes his lack of education, Supp. 7, he could not have been ignorant of his felon status except through an extraordinary act of willful blindness.  "[F]elony status is simply not the kind of thing that one forgets," and this case is no exception.  *See Reynoso*, 38 F.4th at 1092 (quoting *Greer*, 593 U.S. at 508).  Similarly, the evidence indicates that if the case had gone to trial, the government could easily have proven he knew he was a felon.

Mr. Williams may insist that he would have gone to trial, Supp. 10, but the Court need not "accept his bare assertion on collateral review that he would not have pled guilty."  *United States v. Pollard*, 20 F.4th 1252, 1257 (9th Cir. 2021).  On these facts, he would have had no plausible defense to raise at trial and would have known the government had ample evidence to prove his knowledge of status.  Therefore, there is no reasonable probability that Mr. Williams would have gone to trial rather than plead guilty.  He has thus failed to establish prejudice.

### 3.  Mr. Williams Cannot Demonstrate Actual Innocence

Finally, Mr. Williams cannot overcome his procedural default by demonstrating actual innocence.

"The bar for showing actual innocence is high" and "[t]o clear it, a petitioner must show 'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Redrick*, 2024 WL 1091789, at *4 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  Far from "a convincing showing of actual innocence," Reply 16 (quoting *McQuiggin*, 569 U.S. at 386), the record indicates, for the reasons discussed above, that Mr. Williams knew of his felon status at the time he possessed the firearm.  Had Mr. Williams gone to trial, the government would have presented the ample evidence of his knowledge of status.  Mr. Williams therefore cannot demonstrate that no reasonable juror would have found him guilty beyond a reasonable doubt.

### C.  The Court Will Not Hold an Evidentiary Hearing

Mr. Williams' motion does not require a hearing because the record conclusively shows he is not entitled to relief and because he has not pointed to any information outside the record that would be presented at the hearing.

Mr. Williams has requested an evidentiary hearing on the question of whether he knew of his felon status at the time of his offense conduct.  *See* Reply 18.  "[A] district court may deny a § 2255 motion without an evidentiary hearing when 'the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Baugham*, 941 F. Supp. 2d 109, 112 (D.D.C. 2013) (Lamberth, C.J.) (quoting 28 U.S.C. § 2255(b)); *see also Morrison*, 98 F.3d at 625 (same).  "Only where the § 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's

'personal knowledge or recollection' must a hearing be held." *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  No hearing is required when the prisoner does not "point to any information outside the record that would . . . substantially assist[] the district court in its disposition."  *United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005) (Roberts, J.).

Here, Mr. Williams has not identified any new information he would present at the hearing; he apparently seeks a hearing not to offer any fresh evidence, but instead to reiterate what he has said already.  *See* Supp. 6 (stating that Mr. Williams "has submitted to the Court a sworn affidavit stating" that he did not know he was a convicted felon when he possessed the firearm in this case "and would testify under oath at an evidentiary hearing to the same").  At any rate, the Court is satisfied that "the motion and the files and records of the case conclusively show that" Mr. Williams is not entitled to relief.  One of Mr. Williams' key contentions—that he believed his conviction was expunged—is contradicted by the evidence that he must have known he was on parole.  And his other basic claim—that he believed his felony PWID conviction was actually a juvenile offense—is inconsistent with the evidence, including the fact that he was prosecuted as an adult in Superior Court Criminal Division and then spent over two years incarcerated.  Rejecting Mr. Williams' contentions does not "require[] information outside of the record."  *Pollard*, 959 F.2d at 1031.

The Court will therefore deny the motion to vacate without an evidentiary hearing.

### D.  The Court Will Not Issue a Certificate of Appealability

When a district court enters a final order adverse to a petitioner under 28 U.S.C. § 2255, it must issue or deny a certificate of appealability.  Rules Governing Section 2254 and Section 2255 Proceedings for the U.S. District Cts., Rule 11(a).  A petitioner must obtain a certificate of

appealability before pursuing any appeal from a final order in § 2255 proceeding.  *See* 28 U.S.C.
§ 2253(c)(1)(B).  "When the district court denies a habeas petition on procedural grounds without
reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue
when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition
states a valid claim of the denial of a constitutional right and that jurists of reason would find it
debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529
U.S. 473, 484 (2000).  "Such a showing can be made when precedent clearly demonstrates that
courts have come to divergent conclusions based on analogous facts."  *United States v. Ayers*, 938
F. Supp. 2d 108, 116 (D.D.C. 2013) (Lamberth, C.J.).  Because the Court finds that reasonable
jurists would not debate the denial of petitioner's motion, the Court declines to issue a certificate
of appealability.

### E. The Court Will Grant the Government's Motion for Leave to File Under Seal

The Court will grant the government's unopposed motion for leave to file Mr. Williams'
PSR under seal.  *See* Mot. for Leave to File Under Seal.  There is "a 'strong presumption in favor
of public access to judicial proceedings,' including judicial records."  *In re Leopold to Unseal
Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting
*United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)).  But in an appropriate case, "that
presumption may be outweighed by competing interests."  *Id.*  Since PSRs almost inevitably
contain sensitive personal information about defendants, including in this case, the Court will grant
this motion.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **DENY** Mr. Williams' Motion to Vacate and will

**GRANT** the government's Motion for Leave to File Under Seal.

A separate Order consistent with this Memorandum Opinion shall issue.


Date:   _3-27-24_


Royce C. Lamberth
United States District Judge